Dudley Thomas et al. v. A. P. Hammond et al.

1. Practice—Statute of Frauds.—Where exceptions are made to an answer, because setting up an agreement void under the statute of frauds, in the absence of an express averment in the answer that the agreement is verbal, it will not be so presumed, and such exceptions are properly overruled.

2. Same.—Nor can such exceptions be urged on appeal, in the absence of a bill of exceptions, showing that the testimony, when offered, was objected to.

3. STATUTE OF FRAUDS.—An agreement which may or may not be performed within twelve months, is not required by the statute of frauds to be in writing; it must appear from the agreement itself that it is not to be performed within twelve months, in order to come within the statute.

4. PAROL EVIDENCE—CONTRACT.—Where written instruments form part of a more comprehensive transaction, the terms of which are not attempted to be expressed in writing, parol testimony as to such parts of the transaction as were not reduced to writing is admissible.

5. SAME.—A parol agreement, by which the purchase-money notes were to be deposited with an attorney, and from the proceeds of such notes outstanding liens against the land deeded to the maker of the notes were to be taken up and discharged, may be shown, in defense of an action upon such notes. Such an agreement is so far distinct from and collateral to that part of the contract reduced to writing as to allow of its establishment by parol evidence.

6. STATUTE OF FRAUDS.—In this State the rule is settled, that it is not necessary that the consideration of a contract for the sale of lands, or to pay the debt of another, should be expressed in writing.

7. SAME—TRUST.—So, also, that parol evidence is admissible to establish a trust in lands.

8. MEASURE OF DAMAGES.—The measure of damages on the failure to take up a lien upon a tract of land, is the amount of the lien, and not the value of the land lost, if the value of the land exceeds the lien.

APPEAL from Victoria. Tried below before the Hon. T. C. Barden.

A statement of the case is given in the opinion.

*A. B. Petticolas,* for appellant, cited 1 Greenl. Ev., secs. 275, 276; Franklin *v.* Mooney, 2 Tex., 452; Reid *v.* Allen, 18 Tex., 241; Self *v.* King, 28 Tex., 553; Trammell *v.* Pilgrim, 20 Tex., 158; 2 Sugd. on Vend., 220; Cooper *v.* Singleton, 19 Tex., 262; 1 Bouv., 345; Sutton *v.* Page, 4 Tex., 147; Wheeler *v.* Styles, 28 Tex., 243; Sedg. on Dam., 290, 291; Raines *v.* Calloway, 27 Tex., 685; Story on Bills, secs. 187, 355; Pars. on Notes and Bills, 162; Epperson *v.* Young, 8 Tex., 136; Callison *v.* Gray, 25 Tex., 84; Wright *v.* Hays, 34 Tex., 253; Hunt *v.* White, 24 Tex., 643; 1 Sugd. on Vend., 2; Baldridge *v.* Cook, 27 Tex., 569; 4 Kent, 179,

477; Hall *v.* York, 22 Tex., 643; Anding *v.* Perkins, 29 Tex., 353; Watson *v.* Flanagan, 14 Tex., 354; Moore *v.* Curry, 36 Tex., 668.

*Glass & Callender*, for appellees, cited 1 Greenl., sec. 284; McCreary *v.* McCreary, 5 Gill & John., 157; Hall *v.* Maccubin, 6 Gill & John., 107; Lewis *v.* Gray, 1 Mass., 297; Lapham *v.* Whipple, 8 Met., 59; Jeffery *v.* Walton, 1 Stark., 267; McCulloch *v.* Girard, 4 Wash. C. C., 292; 3 Starkie's Ev., 1047, 1050; 2 Phillips's Ev., by C. & H., 772, note 295; Mead *v.* Randolph, 8 Tex., 191; McClenny *v.* Floyd, 10 Tex., 159; Johnson *v.* Deloney, 35 Tex., 42; Edws. on Bills and Notes, 319; 10 Johns., 231; 8 Wend., 437; Cozzins *v.* Whitaker, 3 Stew. & Port., 329; 1 Story's Eq., §154; James *v.* Fulcrod, 5 Tex., 516; Raines *v.* Calloway, 27 Tex., 678; Sedg. on Dam., 171, 186; Morris *v.* Phelps, 5 Johns., 56; Griffin *v.* Reynolds, 17 How., 609; Hunt *v.* Orwig, 17 B. Mon., 73; Dimmick *v.* Lockwood, 10 Wend., 142; Rawle on Cov. for Title, 168, and authorities; Weathered *v.* Smith, 9 Tex., 625; Pars. on Notes and Bills, 262, 275; Story on Agency, §§ 140, 140*a*.

The case was returned for reargument, and *A. B. Petticolas*, in supplemental brief for appellant, argued—

By memorandum in the papers, it is found that the point for reargument is: "Was that part of the agreement to apply purchase-money to liquidation of liens a collateral agreement, or was it a part and parcel of the contract about the land, and could that part of the agreement be proved by verbal testimony?"

The first question—Was the agreement a collateral undertaking?—is answered by the defendant in the negative. He then says it was part and parcel of the contract for the land, and, upon the question as raised by the demurrer, it certainly would have to be so considered.

But upon the pleadings of appellant, filed after the demur

rer was decided, and upon a fair consideration of the facts, the agreement, if made at all, which the appellant denies, was a personal agreement of Miles, cotemporaneous with the deed, but with which appellants had nothing to do. As to Thomas, it was without consideration, and would have been void if made. This is as the facts show it.

On the question, however, as raised by demurrer, and conceding, for argument, that it was part and parcel of the contract of sale, was unwritten proof of it admissible? Appellant says not.

The pleading of appellee sets up no fraud, accident, or mistake, or trust, to authorize such unwritten evidence, and nothing of the kind was sought to be proved, so that no authorities authorizing the admission of parol testimony on any of these grounds is at all in point, and appellant insists that the agreement could not be proved by parol—1st. Because it adds to and contradicts the language of a written instrument. 2d. Because void under the statute of frauds, as not to be performed within one year.

Sale was made 26th of April, 1866; the note contested in this case, by the setting up of this parol agreement, became due September 1, 1868.

On the first point, the following authorities are relied on, in addition to those already referred to:

Welles *v.* Dexter, 1 Root, (Conn.,) 253.

Action in ejectment, plaintiff's title being under a deed by Marsh to his sister; defense, that the deed was delivered on certain conditions, which had not been performed, proved by parol. Judgment: "Parol evidence is not admissible to prove a deed delivered to a party to be an escrow, or to prove any parol conditions which would defeat or contort its legal effect and operation." (Wallace *v.* Baker, 1 Binney, (Penn.,) 610.)

Assumpsit, for a debt evidenced by a writing; defense, a parol contemporaneous agreement. The judgment: "The defendant executes a writing, upon the faith of which the plaintiff parts with valuable property, and afterwards wants

to prove that before he signed it, he had intentions and made declarations tending to render it of no value. * * * It is very clear· that this testimony was properly rejected." The facts of this case are particularly referred to. (Smith *v.* Williams, 1 Murphey, (N. C.,) 428.)

Action, breach of warranty of slave; evidence, written bill of sale, without warranty of soundness; offer to prove such warranty by parol. Judgment, with full citation of authorities that the evidence was inadmissible.

Assumpsit, for the value of mules, sold Frost by plaintiff by virtue of the following note: "Sir: Whatever sum E. Frost shall give his note of hand for to you, we will hold ourselves obligated to pay, in case said Frost should not pay them to you, as long as he and you shall agree to have the said notes lie against Frost." Signed by defendant.

After suit, judgment, and insolvent oath of Frost, suit brought against Tyler; defense by parol, that Frost was able to pay when notes became due, and for some time afterwards, rejected; held by Supreme Court, not error. (Northrop *v.* Speary, 1 Day, (Conn.,) 23.)

Plaintiff sold defendant a tract of land, by metes and bounds, specifying number of acres sold. A note was given for purchase-money, which was afterwards paid; plaintiff alleged, however, in his declaration, that it was agreed between plaintiff and defendant, at the time the deed was made, that if there was more land than the deed called for, defendant should pay plaintiff for the excess; and if it contained less than the deed called for, plaintiff should refund proportionately.

By the court: "The contract stated in the declaration was but one entire contract, made at the time of the sale and conveyance of the land, the whole of which is to be considered as included in the deed and note." Held, the parol evidence inadmissible. (Miller *v.* Washburn, 117 Mass., 371.)

Parol evidence, in this case, was offered to show that when the deed granting a right of way was made, the way existed,

and was known to the parties, and was intended to be conveyed as it then existed; held, admissible. This is a case where the strongest equities existed, calling for the admission of the testimony. (Jones v. Warner, 11 Conn., 40.)

Particular attention is called to the facts in this case. The point as to the evidence was, that, by the terms of the bill of lading, the master of the vessel was to deliver the coal in New York, instead of which he delivered it in the Connecticut river, at East Haddam; and the deposition of the master was offered to show that he was verbally authorized by the agent of plaintiff to carry the coals to East Haddam. The evidence was rejected. (Railroad Co. v. Leach, 4 Jones, (N. C.,) 340.) Defendant contracted in writing for railroad shares, and resisted a call for installments, and was sued. His defense was, that he subscribed upon the express condition and promise of the railroad company that the road should be located at a certain place, and it was located elsewhere; that this was the consideration, and a condition precedent, &c., and this condition had been broken. This he proposed to prove by parol, and it was admitted by the road to be true. (Id., 343.) Held, inadmissible.

The last case which will be specially referred to is, in its facts, exactly in point, and seems conclusive. (Timms v. Shannon, 19 Md., 296.) Appeal from the equity side of the Circuit Court. A mortgaged lands to D, to secure the payment of $1,000. Afterwards A sold the land to B, with covenant of warranty against all persons claiming under A. B executed bonds and mortgage for purchase-money. After payment of all the bonds, except the three last, for $1,500, A assigned the mortgage and unpaid bonds to C, and C sued to foreclose. B defended, upon the ground that, by a parol agreement, made between A and B at the time the land was sold, A agreed to pay the mortgaged debt to D, and if he should fail to do so, then B should retain a sufficient sum for that purpose out of the last installment of the purchase-money. Held, in equity, to be inadmissible. The elementary works

are full of authority on the same point. (Snell's Prin. of Equity, 210; Bing. on Sale of Real Prop., 8, 227, 228, 238; 2 Hilliard on Real Prop., 319; 1 Hilliard on Conts., 162, 167, 169, note A, 170, 171; Hilliard on Vend., 170, 171, 172; Rawle on Cov. for Title, 607.)

"It is one of the most settled principles of the law of vendor and purchaser, that a purchaser, who has received no covenants which cover the defect or incumbrance, can neither detain the purchase-money, nor recover it back, if paid. Unless there has been fraud, he is absolutely without relief, either in law or equity." (Rawle on Cov. for Title, 637, 638, 716, 717, notes 2 and 3, p. 717.)

But such a contract in parol would be void under the statute of frauds. (Dyer *v.* Graves, 37 Vt., 369; Hilliard on Vend., 107, 108.)

"A purchaser of land under an incumbrance, who receives a conveyance without covenants, cannot set up a concurrent parol agreement on the part of the grantor to pay off the incumbrances; for such agreement is parcel of an entire agreement for the sale of the lands. (Duncan *v.* Blair, 5 Denio, 196.)

According to appellee's allegations and proof, this agreement to pay off incumbrances by Miles was a part of the consideration, the price for which the land sold. If so, it must be in writing.

A sold land to B, and gave his bond to make title, on B's verbal promise to pay a debt A owed C. Held, that this verbal contract was void, as a contract for the sale of real estate. (Rice *v.* Carter, 11 Ired., 298.)

In the following cases, the memorandum or agreement in writing was held fatally defective, because it did not include the stipulated price: Ide *v.* Stanton, 15 Vt., 685; Clark *v.* Wright, 1 Atk., 12; Bromley *v.* Jefferies, 2 Vern., 415; Elmore *v.* Kingscote, 5 B. & C., 583.

We hold that the authorities abundantly show that both our points are well taken.

Upon the whole case, as disclosed by the record, equity, as well as law, requires a reversal of the case.

The very reasons which actuated Miles in selling at so low a price was the condition of the title to the property, fully known, and understood, too, by Hammond; and the very best evidence in the world, that no agreement, to the extent claimed by him, was made, is found in the fact that nothing in the written contract evidences it.

*Glass & Callender*, in supplemental brief, added the following authorities: Vail v. McMillan, 17 Ohio, 617; Jeffery v. Walton, 1 Stark., 267; Cobb v. Wallace, 5 Cold., 539; Winn v. Chamberlin, 32 Vt., 318; Creamer v. Stephenson, 15 Md., 211; Cobb v. O'Neal, 2 Sneed., 438; Miller v. Fichthorn, 31 Penn. St., 252; Clifford v. Turrell, 9 Jurist, Part I, 633.

GOULD, ASSOCIATE JUSTICE.—This suit was brought in the name of Dudley Thomas and John and Thomas Wollard, for the use of Travis Hensley, on a promissory note for $1,000, executed by Asher P. Hammond, April 26, 1866, payable September 1, 1868, to Jonathan Miles or order, bearing ten per cent. interest from date, expressing on its face that it was secured by lien on the lands for the purchase-money of which it was given; which note was, on the day of its date, indorsed to the order of the plaintiffs. The petition claimed that the note was given in part payment for four hundred acres of land, made up of different tracts, and sought to enforce the lien thereon, except on forty acres sold under a previous order of sale on another of the purchase-money notes, and except another tract of sixty-seven and six-tenths acres, which had been recovered of Hammond by paramount title. An amended petition sought to charge so much of the land as had been conveyed by Hammond to Mrs. L. F. Nuby, she and her husband being made defendants.

The answer set up that the note sued on was the last installment of $4,000 for lands sold by Miles to Hammond;

that the plaintiffs, at and before the sale, held a deed of trust on the four hundred acres, (it afterwards appears that the debt secured by this deed of trust was $3,215,) and enumerated three other liens on the land, or parts of it, all prior to the deed of trust, one of which liens was a vendors' lien, held by R. H. Coleman, on sixty-seven and six-tenths acres, to which tract Coleman also had a title under execution sale. It alleged that all these liens and claims were known to the parties, and discussed by them, and that the result of the negotiation was a contract of sale, by which it was agreed that Hammond should pay $4,000 for the land; that Miles should convey title; that the purchase-money should be applied first to the payment of these prior liens, and to clearing the land of all prior incumbrances, and that the remainder should go to the plaintiffs, who were to accept the same in full satisfaction of their claim and deed of trust; and that it was arranged that the purchase-money should be paid into the hands of A. B. Petticolas, plaintiffs' attorney, and, as alleged in an amended answer, attorney also for Miles, who was to apply the same to the payment of the liens aforesaid. The answer proceeded to allege that Hammond paid, in ample means to lift all the liens and incumbrances, but that Miles, Petticolas, and plaintiffs had failed to pay off the Coleman claim, which could have been done for the amount of the debt and interest, that is $375, with ten per cent. interest from January 1, 1860; that thereupon Coleman had sued for and recovered the sixty-seven and six-tenths acres, being much the most valuable part of the land, and claiming damages in reconvention. There were exceptions to this answer, (of which the foregoing is a mere outline,) on the ground, amongst others, that it set up a parol agreement to contradict and alter the written contract evidenced by deed, which deed, it was said in the exceptions, was simply a conveyance, without warranty. These exceptions were overruled. In an amended petition, the plaintiff claimed that these purchase-money notes, one for $800, due December, 1866, and two

for $1,000, due, respectively, in 1867 and 1868, were at the time indorsed to them, and placed in the hands of their attorney, with defendants' knowledge, in satisfaction of their debt and deed of trust,—admitted that Miles instructed his attorney to pay off the other liens with the remaining $1,200, being the first money paid, but claimed that the Coleman lien was not to be paid, except at its face value, which, when proffered, was declined by him.

The charge of the court submitted to the jury the contested question of fact as to the purport of the alleged agreement, and instructed the jury that if they found the agreement to be as alleged in the answer, that the measure of damages was the value of the sixty-seven and six-tenths acres lost at the time of the eviction. There was a verdict and judgment for defendants, from which, after motion for new trial overruled, plaintiff appealed.

The two leading questions presented by the assignment of errors are:

1. The admissibility of parol evidence of the agreement set up in the answer.

2. The measure of damages under that agreement.

It is contended by appellant, 1st. That the contract had been reduced to writing in the deed, and notes passed between the parties, and that to admit parol evidence of the agreement set up in the answer would be in violation of the rule that such evidence is inadmissible to contradict or vary the terms of a written instrument. 2d. That the alleged agreement was void under the statute of frauds, as not to be performed within one year. It might be answered, that there is no bill of exceptions to the admission of the evidence now objected to, and that the attempt to present the same points, by exceptions to the answer, cannot avail plaintiffs, because, in fact, there was no express averment in the answer that the agreement alleged was verbal, and because the exception was based on the assumption, not borne out by the record, that the deed was then before the court, and that the

fact appeared that the alleged agreement varied from the terms expressed in the deed. But, inasmuch as the judgment is to be reversed and the cause remanded on other grounds, and on another trial the questions will certainly arise, it is not proposed to leave them undisposed of, notwithstanding the fact that we have found considerable difficulty in arriving at a satisfactory conclusion on the question first stated.

In regard to the objection, that the alleged agreement was not to be performed within one year, it is to be observed, that it does not appear from the agreement, as alleged, or as testified to, that it was not to be performed within a year; but that at most it was an agreement which might or might not be performed within a year, and was not therefore required by the statute of frauds to be in writing. (Thouvenin v. Lea, 26 Tex., 614, and authorities cited.)

In regard to the other point, which is the one on which we have had difficulty, we are of opinion that the deed and notes are but parts of a more comprehensive transaction, the terms of which are not attempted to be expressed in those instruments. Mr. Greenleaf says, that the rule, that "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument," does not apply "where the original contract was verbal and entire, and a part only of it was reduced to writing." (1 Greenl. on Ev., Redf. ed., sec. 284a.) This subject is discussed at length in an able opinion, delivered by Chief Justice Lowrie, of the Supreme Court of Pennsylvania, in which the following rule is deduced from the authorities: "If the matters alleged are, for the purposes of the given suit, a proper part of the transaction to be investigated, and the law does not directly forbid such matters to be proved by parol, and the parties have instituted written evidence of only parts of the transaction, not including the parts proposed to be proved orally, then the evidence is entitled to be heard." (Miller v. Fitchthorn, 31 Penn. St., 260.) In that case, Miller was sued on his

obligation for $293, the balance of the purchase-money of land conveyed to him by Fitchthorne, for an expressed consideration of $550, and which land, at the time of the conveyance, was subject to the lien of a judgment against a prior owner for $202.34, under which the property was subsequently sold by the sheriff. The question seems to have been: Whose fault was it that the land was sold? And the plaintiff was allowed to show that the party who contracted for the land, and had it conveyed to Miller, at the time of the delivery of the deed, agreed to pay the judgment lien, in addition to the $293, for which he gave his obligation. This case, in its facts, and in the questions involved, is not unlike the case in hand. It is clear, both from the pleadings and the evidence, that the transaction between Miles and Hammond was very far from being a simple sale of lands, to which Miles had a title. The title of Miles was in reality so clouded and incumbered as to be nearly, if not entirely, valueless. As to the $67\frac{6}{10}$ acres, he had never had more than a bond for title; and whatever interest he had under that bond, had been sold under execution. His quit-claim deed constituted but a small part of the consideration of the $4,000 which Hammond paid and agreed to pay. If not this entire sum, certainly by far the greater part of it, was, by the agreement of the parties, as alleged and as found by the jury, and in part as admitted and carried out, to be appropriated, not to the benefit of Miles, but to the removal of the various claims and incumbrances, and this was in reality the leading consideration for the $4,000; yet there was no attempt to reduce this part of the transaction to writing. The deed and the notes are alike silent on the subject. It must be observed that the agreement alleged is very different from an undertaking to warrant against incumbrances. If the intention had been to give such a warranty, certainly the deed was an instrument in which such covenants might appropriately have been inserted. Even in regard to such covenants, however, it is to be remarked, that they are of

very infrequent use in deeds in this State. But the agreement alleged, was not to covenant against incumbrances, but simply to appropriate the purchase-money for that purpose.

The defendant probably relied somewhat on the arrangement that the money and notes were to go into the hands, not of Miles himself, but of the attorney of plaintiffs as well as of Miles, and who, according to defendant's version of the agreement, could apply no part thereof to the plaintiffs, until he had first extinguished the prior liens and claims. This agreement as to the application of the purchase-money by the vendor Miles, to be carried out by the attorney of Miles and of the plaintiffs, was certainly so far out of the ordinary course, that its omission in the deed is not a matter of surprise. It has been held that where land is conveyed, and upon such conveyance it is agreed that the grantee shall pay to the grantor all that he obtains upon a resale over and above the sum paid upon the original conveyance, an action may be maintained upon such an agreement, though not in writing, for the balance, when the land is resold for more than was paid. (Graves v. Graves, 45 N. H., 323; Hall v. Hall, 8 N. H., 129.) The alleged agreement in the case before us is so far distinct from and collateral to that part of the contract reduced to writing, as to allow of its establishment by parol evidence. The principle on which such evidence is admissible was recognized by this court in the case of Cox v. Bray, 28 Tex., 259. Bray had made a power of attorney, authorizing D and F, as his attorneys, in his name, to locate his headright certificate, and receive from the Government the necessary patent and title, and for him and in his own name to execute sufficient conveyances for the same. The proposal was to prove by parol testimony that there was in fact a sale of the certificate by Bray to D and F, and it was held competent to do so. The court say of the power of attorney and the sale : "They are collateral and independent facts, entirely consistent with each other, but together pre-

senting the result of the entire transaction or agreement between the parties."

It is to be observed, that in this State the rule is settled that it is not necessary that the consideration of a contract for the sale of lands or to pay the debt of another, should be expressed in writing. (Adkins v. Watson, 12 Tex., 199; Ellett v. Britton, 10 Tex., 208.) So also that parol evidence is admissible to establish a trust in lands. (Chilson v. Reeves, 29 Tex., 280; Leakey v. Gunter, 25 Tex., 403.)

It does not appear to have been contended that the alleged agreement was one coming within any other provision of the statute of frauds, except that in regard to contracts not to be performed in a year. The cases cited by appellant as most nearly in point, are either distinguishable from the present case in their facts, or are in States where the statute of frauds is different or differently construed from ours. Duncan v. Blair, 5 Denio, 196, is of the latter class, and Timms and Wife v. Shannon, 19 Md., 296, is of the former, being a case where the conveyance as executed contained special covenants, and being also a case where there was an innocent purchaser to be protected.

By the charge of the court, the measure of damages was fixed at the value of the land, but at the time of eviction. The court seems to have regarded the agreement set up as equivalent to a covenant against incumbrance. In case of breach of such a covenant, the measure of damages is the actual value of the particular lot of land lost, as compared with the balance of the land, assuming the price agreed upon by the parties is the value of the whole. (Raines v. Calloway, 27 Tex., 678.) But the agreement set up in this case is not to warrant against incumbrances—a covenant which binds the maker at all events to protect the vendee against incumbrances. The purport of the agreement, in so far as alleged to be violated, is simply to pay, or appropriate, so much of the purchase-money as was necessary to buy up Coleman's claim; and the averment was that Coleman's claim could have been

bought for the balance of the purchase-money on that part of the land, viz., $375, with interest at ten per cent. from July 1, 1860.   No reason is perceived why the measure of damages should not be the same as in case of other contracts to pay money, viz., the amount with interest.   The defendant might have bought up the Coleman claim for that sum ; and if he has suffered damages to a large amount, it is because of his own neglect.   The jury appear to have followed the charge of the court, and to have allowed damages in excess of the amount to which defendant could have been entitled. Whilst it is true that the defendant himself set up an erroneous standard of the measure of damages, this does not prevent him from availing himself of the error of the court on this subject.   The judgment is accordingly reversed, and the cause remanded.

REVERSED AND REMANDED.