### ATLANTA MOTOR CO. v. DUNCAN.
#### (No. 3479.)

Court of Civil Appeals of Texas. Texarkana. Dec. 15, 1927.

**1. Evidence ⬅417(12)—Evidence that seller's agent guaranteed tractors would perform work held not to vary written contract, consisting of note and chattel mortgage.**

Where only portion of contract of sale of tractors reduced to writing was note for balance of price and chattel mortgage on tractors to secure it, testimony that seller's agent, prior to execution of note and mortgage, guaranteed that tractors would furnish sufficient power to operate cotton gins at speed of 700 revolutions per minute, was admissible as against objection that it tended to vary the written contract, since it did not conflict with or vary terms of note and mortgage.

**2. Evidence ⬅417(9)—Where portion only of contract is in writing, parol evidence is admissible to show entire contract.**

Where only portion of contract is in writing, it is permissible to supplement the writing with parol evidence to show the entire contract.

**3. Sales ⬅130(4)—Buyer of tractors could not rescind contract for breach of guaranty and recover damages for not being allowed to retain tractors after discovering defects.**

Where tractors were sold under a guaranty to furnish sufficient power to operate cotton gins at speed of 700 revolutions per minute, buyer could not rescind contract for breach of guaranty and also claim damages for not being allowed to retain use of tractors after discovering defects therein, and his recovery was properly limited to amount paid thereon.

Appeal from District Court, Cass County; Hugh Carney, Judge.

Action by the Atlanta Motor Company against A. T. Duncan, in which defendant filed a cross-action. Judgment that plaintiff recover tractors sued for. From a judgment for defendant on his cross-action, plaintiff appeals. Affirmed.

O'Neal & Harper, of Atlanta, for appellant. Bartlett & Newland, of Linden, for appellee.

HODGES, J. On September 2, 1926, the appellee, Duncan, purchased from the appellant three Fordson tractors. As a consideration for the purchase he paid $1,000 cash and executed a note for the sum of $955.84, payable in eight monthly installments, beginning October 2 following. The note provided for interest at the rate of 10 per cent. per annum from date, and 10 per cent. as attorney's fees. It also contained a stipulation that, if default was made in the payment of any installment, the holder should have the option to declare the entire amount due and enforce the collection by appropriate proceedings. Payment of the note was secured by a chattel mortgage on the tractors. Among other provisions the mortgage contained the following:

"If said mortgagor shall fail to keep or perform any of the covenants, stipulations and agreements herein contained on his part to be performed, or if said mortgagee shall at any time deem said mortgagor, said chattels, said debt or said security unsafe or insecure, then upon the happening of said contingencies or any of them the whole amount herein secured remaining unpaid is by said mortgagor admitted to be due and payable, and said mortgagee may at said mortgagee's option (notice of which option is hereby expressly waived) foreclose this mortgage by action or otherwise, and said mortgagee is hereby authorized to enter upon the premises (on) which said goods and chattels may be, and remove and sell the same and all equity of redemption of the mortgagor therein, either at public auction or private sale at Atlanta, Texas, or elsewhere," etc.

Upon the failure of Duncan to pay the first installment at maturity the appellant filed this suit to recover the full amount of the note, with interest and attorney's fees. It also sought a foreclosure of the chattel mortgage. At the time of filing the suit a writ of sequestration was sued out, and the tractors were seized and taken out of the possession of the appellee.

The appellee answered by general demurrer and general denial, and also pleaded, by way of cross-action, substantially as follows: On September 2, 1926, he was the owner of a gin house, in which he had installed three

Murray 80-saw gins, which he intended to use in ginning cotton in his vicinity. He purchased the tractors from the appellant for the purpose of operating these gins. Appellant's agent, with whom he dealt, represented to him that to operate the gins successfully it would require power sufficient to run them at the rate of 700 revolutions per minute, and guaranteed that the tractors would furnish that power. The agent stated that, if they did not furnish that power, the appellee would not be expected to pay for the tractors. Being ignorant of such matters, he relied on the representations of the agent and the guaranty given, and purchased the tractors, paying $1,000 in cash and giving his note for the remainder. The tractors were delivered and installed, but after trial they failed to furnish the required power. The representations of the agent as to their capacity were false, and were fraudulently made for the purpose of inducing defendant to purchase the tractors. He further alleged:

That "on account of the fraudulent representations made to him by plaintiff, the consideration for the execution of said notes has wholly failed; that the tractors sold defendant were guaranteed to furnish all the power to run said gin; that the plaintiff guaranteed to him that said tractors would give satisfaction and do the proper work—all of which defendant is ready to verify."

He averred that with his equipment he could have ginned from 35 to 40 bales of cotton a day, if the tractors had furnished sufficient power, but because of the lack of power he could not gin on an average more than about 12 bales per day. He kept the plaintiff informed of the failure of the tractors to generate sufficient power, and was induced by plaintiff to purchase an attachment at a cost of $125, which proved useless. He also stated that, on account of the levy of the writ of sequestration, further operation of the gin was stopped on October 21, 1926. Up to that time he had ginned 310 bales of cotton, which was 300 bales less than he could have ginned, if the tractors had furnished sufficient power. He was thereby damaged in the sum of $1,500. As a result of the seizure of the tractors before the close of the ginning season, he lost profits from the ginning of 300 additional bales of cotton, to his further damage in the sum of $1,500. He also alleged that the writ was wrongfully sued out, and claimed exemplary damages in the sum of $3,000. He concluded with the following prayer for relief:

"Wherefore defendant prays judgment of the court that he have judgment against the plaintiff, Atlanta Motor Company, R. P. Dunklin, and J. C. King for his actual damages in the sum of three thousand one hundred twenty-five dollars ($3,125), and that the note executed by the defendant be in all things canceled and held for naught, and that he have judgment against the plaintiff, Atlanta Motor Company, for the $1,000 cash paid, and further the sum of three thousand dollars as exemplary damages, for costs of suit, and for such other relief that he may be justly entitled to."

In the trial below the execution of the note and mortgage was admitted. Over the objection of the appellant, the appellee was permitted to prove by himself and other witnesses the oral representations made by the agent, before the execution of the note and mortgage, as to the capacity of the tractors, and oral warranties made by the agent, guaranteeing that the tractors would furnish the required power. The testimony was objected to upon the ground that it tended to vary the terms of the written contract between the parties, without any pleading or proof that they were omitted from the writing by accident, fraud, or mistake. At the close of the evidence the plaintiff requested the court to instruct a verdict in its favor for the amount of the note and a foreclosure of the mortgage. That was refused.

In answer to special interrogatories the jury found that the agent of the appellant who sold the tractors represented to Duncan that they would furnish sufficient power to successfully operate the three gins at a speed of not less than 700 revolutions per minute; but they failed to furnish that power. They also found that Duncan relied upon the representations of the agent, and was thereby induced to purchase the tractors. The jury further found that, by reason of the failure of the tractors to furnish sufficient power, the appellee lost patronage, and assessed the resulting damage at $450. The net value of the patronage he lost after the tractors were taken from him was assessed at $240.

The court appears to have disregarded some of the issues submitted, and rendered a judgment rescinding the contract. The following is the material portion of the order entered:

"It is therefore ordered, adjudged and decreed by the court that the plaintiff, Atlanta Motor Company, do have and recover of and from the defendant, A. T. Duncan, the three Fordson tractors sued for. It is ordered, adjudged, and decreed by the court that the defendant, A. T. Duncan, do have and recover of and from the plaintiff, Atlanta Motor Company, the sum of one thousand dollars."

And further recovery upon the cross-action by the defendant was expressly denied. The refusal of the court to enter judgment in his favor for $640 upon the findings of the jury is in this appeal assigned as error. He here asks that the judgment be reformed, so as to award him those special damages, in addition to the recovery of the cash paid at the time of the purchase.

[1, 2] Under the pleadings the court properly admitted testimony to prove that the appellant's agent had, prior to the execution of the note and mortgage, guaranteed that the—

tractors would furnish power sufficient to operate the gins at a speed of 700 revolutions per minute. That testimony did not conflict with, or vary, the terms of the note or the mortgage. No other portion of the contract of sale had been reduced to writing. The transaction seems to be one where only a portion of the contract was in writing. In such cases it is permissible to supplement the writing with parol evidence in order to show what the entire contract was. Thomas v. Hammond, 47 Tex. 52; G. C. & S. F. R. Co. v. Jones, 82 Tex. 162, 17 S. W. 534; Tex. Cent. R. Co. v. Eldridge (Tex. Civ. App.) 155 S. W. 1010.

[3] Having reached the conclusion that under the facts found by the jury the defendant was entitled to a rescission of the contract, the court might also conclude that defendant was not, under the circumstances, entitled to damages for loss of patronage. The appellee had no right to rescind the contract, and also claim damages for not being allowed to retain and use the tractors after he had discovered the defects.

The judgment is affirmed.